IN THE UNITED STATES DISTRICT COURTS
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

UNITED STATES OF AMERICA,

v.

MICHAEL RICHARDSON,

Defendant.

CRIMINAL NO. 4:17-CR-77

## MEMORANDUM OPINION

On September 21 and 25, 2017, the parties appeared before the Court on the Government's Motion for Revocation of Release Order Pursuant to 18 U.S.C. § 3145 (ECF No. 19) and the Government's Supplemental Motion for Revocation of Release Order Pursuant to 18 U.S.C. § 3145 (ECF No. 22) (collectively, "Motions to Revoke"). At the conclusion of the hearing, the Court **GRANTED** the Government's Motions to Revoke and ordered that the Defendant be detained pending trial. This Memorandum Opinion elaborates on the Court's reasons for granting the Government's motions.

## I. PROCEDURAL HISTORY

On August 16, 2017, a federal grand jury sitting in Newport News named Defendant in a 29-count Criminal Indictment charging him with the following: Conspiracy to Violate Federal Firearms Laws, in violation of 18 U.S.C. § 371 (Count 1); Unlicensed Interstate Transportation of a Firearm, in violation of 18 U.S.C. § 922(a)(3) (Count 2); sixteen counts of False Statement During Purchase of Firearms, in violation of 18 U.S.C. §§ 922(a)(6) and 2 (Counts 3–18); and eleven counts of Possession of a Firearm by Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Counts 19–29). ECF No. 3.

1

On September 1, 2017, Defendant made his initial appearance in this Court, and the Government moved for his detention. See ECF No. 12. On September 12, 2017, a detention hearing was held before Magistrate Judge Douglas E. Miller. See ECF No. 17. Judge Miller ultimately denied the Government's motion for detention and ordered Defendant's release with several conditions, including, but not limited to, restricted travel, the appointment of a third-party custodian, and electronic monitoring. See id. The next day, the Government moved to stay the release order and moved for revocation of same. See Motion to Stay, ECF No. 18; Motion to Revoke, ECF No. 19. On September 13, 2017, Judge Miller granted the Motion to Stay. ECF No. 20. The Government's Motion to Revoke was set for hearing, and the parties submitted additional briefing to the Court. See Supplemental Motion for Revocation, ECF No. 22; Defendant's Response, ECF No. 23.

On September 21, 2017, with the Defendant present, the Court conducted a hearing on the Government's Motions to Revoke. ECF No. 24. At the conclusion of the hearing, the Court withheld ruling, instructed counsel to undertake further investigation, and continued the matter until September 25, 2017. Id. The continuation of such hearing was held on September 25, 2017, at which time the parties presented additional evidence and argument. See ECF No. 25. At the conclusion of the hearing, the Court granted the Government's Motions to Revoke.

## II. MOTION TO REVOKE ORDER OF RELEASE

### A. Standard of Review

The Bail Reform Act of 1984 ("Act"), 18 U.S.C. § 3141 et seq., permits a district court to review a magistrate judge's release order on motion by the government. 18 U.S.C. § 3141(a). "When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions of release." United States v. Stewart, 19 Fed. App'x

2

46, 48 (4th Cir. 2001) (emphasis added).

The Court must hold a hearing to determine whether revocation of release is appropriate. At the hearing, "such person has the right to be represented by counsel, and, if financially unable to obtain adequate representation, to have counsel appointed." 18 U.S.C. § 3142(f). In addition, "the person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." Id. Furthermore, "the rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." Id.

Where, as here, the defendant has been charged with a crime that "involves the possession or use of a firearm," the Court must determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of any other person and the community. 18 U.S.C. § 3142(f)(1)(E). The Government bears the burden of proof and needs to prove either risk of flight or dangerousness to prevail. Stewart, 19 Fed. App'x. at 48 (citation omitted). Specifically, the Government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's appearance at future court proceedings, or by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. Id. (citations omitted).

The Act provides several factors for the Court to consider when determining whether the Government has met its burden. 18 U.S.C. § 3142(g). These factors include:

(1) the nature and circumstance of the offense charged;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and
(4) the nature and seriousness of the danger to any person or the community posed by the individual's release.

Stewart, 19 Fed. App'x at 48 (citing 18 U.S.C. § 3142(g)).

### B. Analysis

In this case, the Government argued that the Defendant satisfies both conditions for detention under 18 U.S.C. § 3142(f)(1)(E). However, in light of the evidence and argument presented on the Government's Motions to Revoke, and upon consideration of the § 3142(g) factors, the Court **FOUND** that the Government only met its burden in proving the first of the two conditions: risk of flight. The Court's reasoning and consideration of the § 3142(g) factors are discussed below.

#### 1. Nature and Circumstances of the Offense Charged

Defendant's charges are undoubtedly serious. He stands accused, as a convicted felon, of conspiring with others to conduct straw purchases of at least 16 firearms from licensed firearms dealers located in the Eastern District of Virginia between May 2015 and October 2016. ECF No. 3. The context in which the charged crime was committed is also serious. The Government proffered that Defendant committed the alleged offense while operating as a paid confidential informant for the New York Police Department ("NYPD"), and that Defendant was paid over $1,000 for providing information relating to the possession of one of the 16 firearms that he and his co-conspirators were responsible for purchasing and transporting to New York in the first instance. The Government further proffered that the NYPD denied knowing of or authorizing any of Defendant's alleged offense conduct.

In addition, the Court found that the Defendant's incentive to abscond is clearly stronger in this case as compared to his prior criminal cases because he is now facing numerous charges, which carry severe penalties, in a complex federal case.

#### 2. Weight of the Evidence against the Defendant

The Court also found that the evidence against Defendant is strong. The Government

4

proffered that at least one of the straw purchasers involved in the conspiracy has identified Defendant by name and has confirmed his role in the conspiracy. The Government also purports to have wire transfer records showing that the Defendant wired money to such straw purchaser shortly after the sale of one of the 16 firearms at issue. In addition, the Government purports to have cell phone and other travel records placing Defendant in the Eastern District of Virginia close in time to all but one of the alleged straw purchases. Furthermore, after his arrest for the instant offense, and after he waived his Miranda rights, Defendant made certain inculpatory statements to the investigating agents, including admissions that he traveled to the Eastern District of Virginia with persons engaged in the purchasing of firearms in Virginia and that he knowingly "funneled" firearms to New York for various reasons.

### 3. History and Characteristics of the Defendant

Defendant's history and characteristics also weigh in favor of detention. According to the uncontested portions of Defendant's pretrial services report and subsequent addenda, Defendant is 40 years old and was born in Bronx, New York in 1977. He lived in New York for the majority of his life until he obtained, at some point in the last two years, at least a part-time residence with his fiancé, Tyisha Johnson, in a rented home located at 918 Moonlit Crescent, Stockbridge, Georgia ("Stockbridge Residence"). Such residence is where Defendant was found and arrested on the underlying charges in August 2017. Notably, Defendant and Ms. Johnson have a six-month old infant, and Ms. Johnson is currently pregnant with their second child.

At the hearing on September 25, 2017, Defendant's mother, Barbara Lesane Nsiah, testified under oath that, in June 2017, she moved to the Stockbridge Residence to help care for Defendant's infant child and has lived there since. Ms. Lesane also testified that the current residents of the Stockbridge Residence include herself, the Defendant (excluding his current detention period), Ms. Johnson, their infant child, and Ms. Johnson's 18 year-old daughter from

5

another union. Ms. Lesane further testified that her previous residence was a New York apartment where she lived beginning in 2007. She testified that the Defendant lived with her full-time in such apartment from 2007 until sometime last year, after which he visited her New York apartment only occasionally to check up on her.

    a. <u>Defendant Lacks Strong Ties to Any Particular Jurisdiction.</u>

Apart from these family ties to the Stockbridge Residence, the Court found that Defendant has virtually no other ties to the state of Georgia. Importantly, he has never had any verified employment in that jurisdiction. Defendant's last verifiable place of employment is Ace Inventory located in New Jersey. The Government proffered that, according to Ace's employment records, Defendant has not worked there since 2016, which notably conflicts with the information that the Defendant initially provided to pretrial services.

Moreover, the Government also purported to have cell phone and travel records showing that Defendant spent more than half his time in New York in the year leading up to this arrest. The Defendant also allegedly admitted to federal agents at the time of his arrest that his role as a confidential informant for the NYPD was his primary source of income. However, according to Ms. Lesane, Defendant has not lived in New York full-time since at least 2016.

Clearly, the Defendant lacks strong ties to either New York or Georgia as no permanent address has been shown. Indeed, based on the evidence before the Court, it is difficult to conceive that Defendant could be served with proper process in any jurisdiction.

    b. <u>Defendant's Criminal History is Troubling and Extensive.</u>

Additionally, the Court found that Defendant's criminal history is extensive and shows a clear lack of respect for the law. He was convicted of several misdemeanors as a young adult, including Petit Larceny, Possession of Weapon, and Assault at age 18, as well as Disorderly Conduct at age 30. Notably, Defendant also committed two drug-related felonies as a young

adult: Criminal Sale of a Controlled Substance – 3rd (age 20) and Criminal Sale of a Controlled Substance, 5th Degree (age 21). Moreover, in 2011, the Defendant was initially charged with felony possession of a weapon in the New York State Supreme Court, but he ultimately reached a plea agreement with the State by which he pled guilty to a misdemeanor – Criminal Possession of a Weapon in the 4th Degree – in exchange for his cooperation in other criminal matters. Such criminal history, particularly when paired with his minimal employment history, casts serious doubt on Defendant's willingness or ability to comply with any conditions of release.

  c. <u>Defendant's Mother is Not a Suitable Third-Party Custodian.</u>

In an attempt to allay these concerns, the defense called the Defendant's mother, Ms. Lesane, at the September 25, 2017 hearing to testify about her suitability as a third-party custodian. Based on such testimony, the Court found that Ms. Lesane clearly understood the requirements of being a third-party custodian and the penalties for non-compliance. The Court also found that Ms. Lesane is intelligent and self-sufficient, particularly in light of her impressive career as a receptionist and cashier at a New York law firm for over 20 years prior to her retirement. However, the Court ultimately found that Ms. Lesane's desire to protect her son, the Defendant, outweighs her willingness or desire to comply with the difficult requirements of custodianship. This was made especially clear to the Court when Ms. Lesane attempted to excuse and/or justify the presence of the marijuana found in Defendant's bedroom at the time of his arrest. While Ms. Lesane's protective impulses are understandable, such demonstrated bias ultimately disqualifies her as a third-party custodian.

  4. **Danger to the Community**

Finally, the Court considered the Defendant's risk of dangerousness to others and to the community. As noted above, the Court found that the Government did not prove by clear and convincing evidence that Defendant should be detained on the grounds of dangerousness.

7

Defendant's criminal history does not display a strong propensity toward violence, nor did federal agents find any weapons on Defendant's person or in his residence when he was arrested on the underlying charges.

### III. CONCLUSION

In sum, upon consideration of all the evidence and arguments presented, the Court found that Defendant's criminal history, the severity of the charges and penalties he faces in the instant case, his tenuous ties to any particular jurisdiction, and the unavailability of a suitable third-party custodian show that no condition or combination of conditions would reasonably assure the Defendant's appearance at future court proceedings.

Accordingly, the Court **GRANTED** the Government's Motion and Supplemental Motion for Revocation of Release Order Pursuant to 18 U.S.C. § 3145, and **ORDERED** that the Defendant be detained pending trial. ECF Nos. 19, 22.

The Clerk is **DIRECTED** to forward a copy of this Opinion to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
September 26, 2017